Good morning. May it please the Court. My name is Robert Mose and I represent Higher Taste, the appellant in this matter. And as we gather here today, my client, Higher Taste, is able to get its message about the spiritual benefits of a vegetarian diet out to the public at the Tacoma Zoo thanks to this case. And we're left to quibble about who's going to bear the expense of that effort. I'd be resentful, but I did get a chance to come up here from rainy Southern California to a clear day in Seattle, so I'm quite pleased. Obviously, I had a chance to introduce myself to my opposite number before we started, and we were both in agreement that this is a case that lies somewhere in the gray area. The only question we don't agree on is whether it's 90 percent black or 90 percent white, but here we are. And obviously the Buchanan case, and I'm taking a stab at pronouncing that Buchanan as opposed to Buckhannon because I didn't talk to anybody in West Virginia, but the Buchanan case has a lot of language in it that makes it difficult for me to claim attorney's fees here. But the holding in Buchanan is simply that the catalyst theory, which was kind of the warhorse of civil rights attorneys before Buchanan, is gone. And what happened in Buchanan is that a case was filed, and before any judicial determination had been made, the law that was being challenged in the case was changed, and consequently the case was mooted out. There was no agreement. There was no court order. There was no injunction. So in that kind of case, which I'm familiar with, I did a lot of cases that involved just that issue, and I was pleased by the ease with which I could get attorney's fees under those circumstances, but those days are gone. But this is a very different case. Let me ask you this. I find Buchanan and the subsequent Supreme Court case, what is it, Soll v. Weiner and so on, also to be sort of troubling in supporting your position. If it is in the gray area, why shouldn't we defer to the district court's determination? Because even the statute itself is permissive. The district court may award attorney's fees. And I know you don't do, I assume you do not do habeas corpus work in California, but we have a whole line of authority that tells us, in those cases, that where the Supreme Court hasn't opined on a particular area and a state court sort of makes a ruling in that area, that it can't contravene Supreme Court precedent to do that. And if the standard is abuse of discretion, how did Judge Settle abuse his discretion here in denying attorney's fees? Well, the standard is a general sense of use of discretion. But in the Ninth Circuit case Barrios, the court says if there are elements of legal analysis and statutory interpretation, those are to be reviewed de novo. And the interpretation, the statute here talks about prevailing party. And Judge Settle is charged with deciding whether or not higher taste was a prevailing party in this case. That is a legal determination. It involves factual elements, and those need to be weighed. And where Judge Settle went wrong was that instead of looking at the totality of the situation here, he had a checklist. He said preliminary injunction, well, that's not enough. Settlement agreement, well, that's not enough. And the problem is that unless Buchanan means that you can never get attorney's fees unless there's a consent decree or a judgment, which it doesn't. It doesn't say that. It doesn't mean it. Then there has to be guidance from this court about how to weigh the circumstances that exist. And what's different here, and it's a very unusual case, in that, you know, certainly if you just say preliminary injunction, okay, I concede fully that a preliminary injunction is not enough by itself. Why do you concede that? I don't for the life of me understand why you're making that concession. Well, there are cases that hold. For example, if there's a preliminary, not this preliminary. That was left open by the Supreme Court in the Sewell case. And we have post-Buchanan, I would call it Buchanan. We have post-Buchanan Ninth Circuit cases that say just the opposite. I have a majority now. It's Buchanan for me now, too. No, counsel, I'm serious. I'm just stunned that you would make that concession. No, I'm not conceding here that it's not enough. I'm saying here it is enough. But there are cases that say when a preliminary injunction merely preserves the status quo and doesn't confer any additional rights on a party, and then that preliminary injunction is dissolved. For example, let's say a city enacted a new ordinance and the party came in and preserved the situation as it existed on the day before the ordinance took effect. And then later on the city decided to repeal that ordinance and adopt something else. I don't know that that preliminary injunction would be enough of a judicial imprimatur to require the award of attorney or to justify the award of attorney. That's not our case. Your case is you actually won the relief you wanted at the preliminary injunction stage. And I agree completely. And not only did I win it at the preliminary injunction stage. You preserved it then in a settlement. So I don't – I mean, to me, this doesn't strike me as a difficult case for your position at all, and I'm surprised that you're so pessimistic coming up to the podium. Well, I'm not – I'm not intending to – if I'm sounding pessimistic. You do. I just hadn't gotten to the optimistic part of my presentation. Please get to it. I want to hear it. And that's what I was saying, is that the problem – and that is the problem is that there are cases saying a preliminary injunction is not enough. There are cases saying that an agreement is not the same as a consent decree. But I think here the preliminary injunction is enough and the agreement is enough. But combined, combined, they're plenty. I mean, they're more than enough. We got more here than many – than most cases ever get. And we have people out there right now doing what they wanted to do from the very beginning. Now, you know, if this case had gone to judgment, if there had been a trial, we would have had a judgment that this rule was invalid, the rule prohibiting solicitation of funds. There would not have been any rules and regulations that govern the behavior of the zoo and the parties subsequently because the court's job is not to write those rules. So the zoo here talks about how the rules and regulations can be modified and, therefore, we don't have anything permanent. Well, the rules and regulations can always be modified to adjust to changing circumstances. But what can't be modified here – But setting aside the preliminary injunction issue, you're talking about the rules and regulations, the settlement agreement. What was presented to the trial judge at the end of the case was essentially a stipulation to dismiss, not the agreement, not the rules and regulations. Am I correct there? Well, yes, but in the attorney's fees motion, the settlement agreement was presented. And the settlement agreement is a contract between the parties which confers rights on higher case that it might never have obtained in a trial. Why didn't you reserve continuing jurisdiction in the history court to enforce the terms of the settlement decree? Well, that was obviously negotiated as part of the settlement as to why that wasn't included. I mean, the agreement is enforceable as a contract. In state court. Well, it's still enforceable. It still memorializes and perpetuates the legal rights of the parties in a way that it might not even have been done had there been a judgment in the district court. You know, I was just in a court in Orange County, a district court, and somebody was coming in to try to enforce essentially a consent decree. And the judge said, well, you know, you guys agreed to this, and I signed off on it, but I don't know what to do with it because I can't hold somebody to contempt for violating this because I didn't write it. And I don't think it's enforceable that way. And we have the situation with Judge Rykoff in New York where he refused to adopt a consent decree and he got slapped by the circuit on that. I don't think there's any magical distinction between a consent decree and a binding agreement for purposes of prevailing party. Let's talk about judicial imprimatur, though, which is what we're addressing here as being sufficient. I think we said that in Watson versus the County of Riverside, to hold that the preliminary injunction alone might be enough. And in that case, we upheld the award of attorney's fee. Right. Well, I think it isn't. That's why I think what Judge Settle didn't do was look at all the factors considered together, including the preliminary injunction, which changed the status quo, which, you know, there was a policy that began in 2005 that excluded my client from, I mean, on paper, excluded my client from soliciting donations. That was ratcheted up in 2009 and 2010 to the point where the zoo was putting signs out saying, free shirts, next to the client's table, and in which counsel for the zoo adamantly stated in correspondence, there is absolutely no First Amendment right here. The preliminary injunction changed all that and left in place for a period of 15 months the client's right to do their activity. And then that was superseded by an agreement, an enforceable agreement, which perpetuates those rights. I'm looking for evidence of judicial imprimatur, and Judge Gleeson asked you if it was true that the only thing that was actually presented to the district court was simply a stipulated motion to dismiss. There wasn't a consent decree. There wasn't a settlement agreement with continuing supervision by the district court so that if the zoo violated the terms of the agreement, you could return to federal court and seek appropriate relief. None of that. There was no – the settlement agreement did not provide for continuing jurisdiction, but it did establish the rights of the parties in a way different from a situation in which a law is simply repealed and the parties are left to their own to go forward. But how did the judge know that? As I read the stipulation to dismiss, it was the case is over. Sign the order of dismissal, please. We agree on that. And plaintiff intends to file a motion for fees. All right. The court retained jurisdiction. And, of course, that's another way in which the continuing judicial involvement was assured by the settlement agreement. The judge had the power to decide this issue with fees, but the judge had – But he had that power under the statute, does he not? Well, it wouldn't exist unless there was a stipulation to that effect. Oh, I see. Stipulation to file the claim for fees separately. Yes. It was necessary to retain the court's jurisdiction for that purpose. And the judge had in front of him the settlement agreement, which had in it its – I mean, the operative terms are at 178 of the executive record. But the settlement agreement wasn't filed until the motion for fees was filed after the case had been dismissed. Well, I understand. Am I correct in that? I think technically that's true. It was not filed with the court, but the court was aware of it and was asked to consider that as part of the decision. Well, the court was aware that the parties had settled, which is why they presented a stipulated order of dismissal. But that's different from knowing the terms of the – or approving the terms of the settlement. Well, but the court – when the court was asked to rule on fees, the court knew the terms of the settlement. They were part of the – But by then the case had been dismissed. That's the problem we're having here. It's a sequence of events. Well, I don't – since by that point the rights of the parties were fixed, that is the higher taste had an ongoing right to sell T-shirts outside the entrance of the zoo. That was fixed by contract. That contract effectively memorialized and extended indefinitely the preliminary injunction that had been earlier granted by the court. So the rights had been established by that point. But how did the trial judge know that? All I read in the stipulated motion to dismiss was we've resolved the issue, and I'm paraphrasing. We've resolved the issue, and there will be a motion filed for fees under 1988. Right. And as of the day that the judge signed that, he didn't know what the terms were. Correct. But as part of the motion for attorneys' fees to show that we were the prevailing party, the agreement was evidence of the fact that higher taste was the prevailing party. Do you want to save some time? I'll save 1.36. You got it. All right. We'll hear from the city. Mr. Rosenberg. Good morning, please, the court. Adam Rosenberg, further respondent, Metropolitan Parks District. So we have these cases that say that all you need is a preliminary injunction and then perhaps if the case is rendered moot, and that in essence preserves permanently what had been won preliminarily, that that's enough. I don't see for the life of me how winning at the preliminary injunction stage and then preserving permanently through settlement can be treated any differently. So help me with that. I'll be the first to admit that there's no bright lines. We're not working with the defining rule that the Supreme Court gave us. But looking at the cases as a whole, you can get principles. And I'd submit that there's three principles that you can sort of tease out of the cases, this circuit and others. The first is that there is a stopping point. There are cases, Sol versus Weiner included, where a preliminary injunction is granted and fees don't follow. Because you lose on the merits. That was the circumstances of that case. Not our case, so skip over that. Not our case. Get to our case, please. Then you have exceptional cases where fees do follow, and that's Watson. It's not exceptional. The case just gets rendered moot through circumstances beyond anyone's control. What Watson swung on was Williams versus Alioto. Same thing. Those are two different cases that got to the same place. Right. But just please jump to the question I started with, okay? You win affirmative relief at the PI stage. You end up basically preserving that victory forever by virtue of circumstances beyond your control, mootness. How do we treat that differently from this situation where they win and then you guys capitulate and give them basically what they want at the preliminary injunction stage in the settlement agreement? Watson involved a discrete event, a discrete moment in time. The relief sought in Watson was to keep a certain document out of a termination hearing, and this court embraced that and said after that termination hearing came and went and the document was kept out because the district court judge said so, it had done its job and essentially mooted itself. There was no opportunity to seek additional relief, seek permanent relief. Counsel, I'm intimately familiar with the case. I've read it probably as many times as you have, so just tell me, how does that get you to where you need to go here? That's a circumstance of case where the courts have been open to awarding fees, where it involves a discrete event. You see the same thing in I think it's Young v. Chicago. Let me just try one more time and then I'll give up, okay? I know what those cases hold. How does the rule that we've already established in the preliminary injunction win followed by mootness, how does that principle not apply in our case, preliminary injunction followed by settlement? Our case doesn't involve a discrete event for a moment in time. If it did, the complaint would make no sense, the settlement would make no sense. What was sought in this relief was permanent invalidation of regulation, 4D05. The preliminary injunction didn't do that and Judge Settle pointed out that the preliminary injunction didn't do that. It dissolved with the nondescript dismissal order that was agreed to by the parties. This wasn't Watson and this wasn't a case like Williams where there was no room to leave things as they were. That was Williams v. Aliotto, that was the racial profiling case where there was a finding of unconstitutionality. After that, the war is over. I mean, that was the same thing in Watson. After the termination hearing, the war is over. That's why, to me, this seems like a stronger case for awarding fees because you actually had to give up something further in the settlement. It wasn't just that, well, the case is over due to circumstances beyond anyone's control. You guys actually had to make an affirmative decision. You know what? Rather than risk going to trial and losing on the merits, we're just going to throw in the towel now and give them the relief that they won at the preliminary injunction stage. I certainly appreciate that the record could be read that way, but there's a lot of ways that the record could be read and there's a lot of reasons that parties settle. That isn't because of the strength of their position that they'd certainly lose. Judge Settle emphasized that I think no less than five times in his preliminary injunction order, that there was absolutely room for further factual development, that the Park District's interests were, quote, unquestionably significant. And the question is whether to put the resources, time, effort, and strain of further litigation into pursuing that or finding an amicable resolution, which is what was done. And generally courts don't punish the defendant for entering into a settlement. Nobody's talking about punishing you, but let me ask you this. So do you concede that you, in the settlement agreement, essentially gave them the relief that they won at the preliminary injunction stage? They say that that's what- I'm asking you. Do you concede that? Yeah. I mean, I think that they got what they wanted. I think that they're allowed to sell T-shirts at the entrance. I don't think the record can be read otherwise, and no discovery was done, so I can't pierce their subjective statements. So how in the world do you contend they're not a prevailing party? They got from the court an order granting them the right to sell this merchandise. They then preserved indefinitely going forward that same right through the settlement. I don't see under any circumstances how they couldn't be viewed to have won the case. I think it comes back to Buchanan. The first question is whether there's a material change in the party's relationship, and that's defined by Farrar as the plaintiff being able to force the defendant to do something it wouldn't otherwise do, and apart from catalyst theory, which is when the plaintiff gets what they want, but it's because the defendant just gives up apart from any order. So is the answer you're conceding there was a material change in the party's relationship? The opposite. I'm saying there was not under Farrar, because under the terms of the settlement, they're allowed to sell shirts pursuant to the rules and regulations, quote, unquote. And the rules and regulations, section 11, makes it clear that. Well, I don't read the settlement agreement that way at all. In fact, in the consideration section of the agreement, you quite clearly gave them a contractual right that they could enforce, even if you repealed the regulations altogether. Now, as to the rest of the world, it would be effective, but as to them, I don't think there's any question that they could come back and say, no, you've agreed to allow us to engage in First Amendment activities in this area. I certainly read the settlement different, that their rights are based on the rules and regulation. But sort of leaving that disagreement aside, then you still have to get to judicial imprimatur. And we have that at the PI stage. I don't think the preliminary injunction can do service as a judicial imprimatur under these circumstances. So is that the third principle that we can glean? I sort of lost track of the principles. Well, I got the first two. I got the stopping point, Soll v. Weiner, you know, but you lose at the end of the day. That's not this case. Mootness after the preliminary injunction is entered, that's Watson. And then we started questioning you, and I'm dying to hear the third principle. Well, the third is that fees are the exception, not the rule. And there's cases from, I think, just about all the circuits where a preliminary injunction is entered. The defendant will then change the regulations, in effect, giving the plaintiff exactly what they wanted. And then fees don't follow. I mean, that's Dupuy v. Samuel. That's Northern Cheyenne v. Jackson. And I think that's Sixth Circuit, Seventh, Eighth, Fifth, Tenth, and Fourth all have decisions. And they're certainly cited in the brief in which a preliminary injunction was granted. It was mooted by voluntary conduct. And then fees didn't follow. So is it your position that to base a fee award on a preliminary injunction is only appropriate when the injunction addresses a discrete event in time and not longstanding relief, as was the case here? I think there's two circumstances where this circuit has granted fees following a preliminary injunction. That's one of them, when it embraces a discrete event or moment in time. The other is when there's, quote, no room for the defendant to leave things as they were. And that's Williams, where there was a finding of unconstitutionality. That's Taylor v. Wesley. That was the complicated procedural case where California had to rewrite its law. You say Williams involved a finding, but I thought that was a preliminary injunction appeal. A preliminary injunction was granted. And it got mooted while it was on appeal to our court. But there's no more of a finding of unconstitutionality there than there was here. I believe on page 848 the court found the regulations to be unconstitutional. It was racial profiling. I'm talking about, yeah, at the district court level? They invalidated the regulations, or they deemed them unconstitutional. Right. That's a far cry from our case. Okay, what do we have? Maybe you can help me here. I guess I thought the district court here did find that your conduct violated the plaintiff's First Amendment rights. It didn't make a finding. It would be a different case if Judge Settle said that the park district's interests weren't constitutional interests, safety and aesthetics. If those were unconstitutional aims and there's no room to leave things as they were, Judge Settle went out of his way to say the opposite, to say that these are unquestionably constitutional aims. The question just begs for more fact-finding, that it's an open question and there absolutely was room on a more developed record with discovery and such to leave things as they were. Had the park district elected to fight to the end and put those resources in and gather facts, then the regulation could very well be upheld. So are you relying on the language in Judge Settle's order of June 4, 2010, page 11, starting at line 5, that although I'm not deciding essentially the merits of the constitutional challenge, I am finding a likelihood of success on the merits? Yeah. I mean, he, I think, several times said, you know, on this record, and sort of contemplated further fact-gathering and marshaling. And that's what certainly other courts have said, and I certainly concede that it's in other circuits, but I think it's the right decision, that preliminary injunction outside of the usual, typically speaking, it's not a merits inquiry, and that's something that's necessary to trigger fees, according to the Supreme Court in Hewitt. You're saying that there's no merits determination of any sort in a preliminary injunction ruling? It deals in probabilities. Right. Actually, likely. The plaintiff has to be likely to prevail on the merits to get that relief, and that's what the judge here ultimately granted them. The courts that have looked at that said that that's a different inquiry than a merits inquiry, that we're not dealing on the merits, we're dealing in probabilities, and they've drawn that distinction. And I think for good reason, because we're talking about a decision that was made a few weeks into a litigation where a suit was filed, a TRO was sought the next day, and I mean there's just not an opportunity in a lot of cases, especially a factually rich case, to develop that kind of record. So you're drawing a distinction between the procedural requirements under Rule 65 of showing entitlement to injunctive relief from an actual resolution of the constitutional challenge on the merits, which would presumably follow some sort of a trial as to whether or not to convert it to a permanent injunction. I think that that distinction is borne out in the case law, and I think that there are cases in preliminary injunctions where the court doesn't need to, is in a position to make those decisions in a permanent way. And that was Taylor, because the preliminary injunction followed an appellate decision that basically invalidated California's estate law. And under those circumstances, I mean, the war was over, and that would be a circumstance, Your Honor, where fees would be appropriate. That was Taylor, I know cited in my friend's reply brief, was the people against police violence case. That was a Third Circuit case, and that was another case for the order. So how would you distinguish Watson? Watson embraced a discreet event. Well, but the discreet event was the county cannot use the officer's compelled use of force statement at his excessive force hearing. So is your argument that that really was a determination on the final merits of his claim, that this is not admissible evidence that the county can use against me? I think that that's a fair summary. I think that the way the circuit had sort of characterized it in Watson was that under those circumstances, when you have a discreet event, the preliminary injunction is all that's sought. It does its job, and then by its own operation becomes moot. Under those circumstances, it's impossible to continue to fight for more permanent relief because you've gotten what you've wanted already. Well, let me ask you, how do you explain the language I read from Watson, that I take from Watson in terms of a principle, if you want one, is this. A preliminary injunction issued by a judge carries all the judicial imprimatur necessary to satisfy Buckhead. To me, that basically answers the question before us in terms of needing something from the judge saying, you know what, there's merit to this claim. Watson seems to suggest that a finding that the plaintiff is likely to win at the preliminary injunction stage is all that's needed to satisfy Buckhead. I certainly appreciate that language. I'm familiar with it. The court, I think, a few paragraphs down qualifies it under these circumstances. Show me where I've got the case. I don't read any qualification into that statement. I mean, I think that I don't think there's a per se rule that a preliminary injunction necessitates prevailing party. If there was, then. The qualification just goes back to your first principle. The qualification is the principle that ultimately got quoted in Soule, which is you don't get fees if you win at the preliminary injunction stage. The case goes forward and you lose at final judgment. That's clear from, we know that now from Soule, and, in fact, Soule quoted Judge Silverman's language from Watson. But in terms of the situation before us, there's no qualification to the language I just read to you. I respectfully disagree, and I think. Point me to it. I think that the. Do you have the case? I do. Point me to it. I honestly don't see it. We'll give you extra time to get your case. Or you can have my copy if you can't find it. Here. Look at mine. That's all right. We've got it. With highlighting. With highlighting, right. And I think I highlighted that language at 1096. It makes it easier. Anticipating Judge Watford's question. I think if you go down to the next paragraph, the preliminary injunction was not dissolved for lack of entitlement. Rather, Watson's claim for permanent injunction was rendered moot when his employment termination hearing was over after the preliminary injunction had done its job. So I think that's the analytical distinction. When you have circumstances like this, it's impossible to get to permanent injunction and sort of have that discussion. And that's what. That's the qualification you are asking us to rely on. I believe it is your own. Thank you, Mr. Rosenberg. Unless that panel has any further questions, you're out of time. Mr. Most gets the last word here. Thank you again, Your Honor. I just wanted to emphasize again, the preliminary injunction here is not like the preliminary injunction in the other cases for the most part that have been cited in that this was actually contested considerably on the merits. There was a request for TRO that was turned down. There was a briefing schedule set up for the preliminary injunction. This was an ordinance or rule that was adopted in 2005. Presumably the zoo had some factual basis for it. When it was adopted, it was well known to the zoo. There had been a year of pre-litigation correspondence among the parties in which we said we were coming to court to challenge this. The zoo had plenty of opportunity to develop a factual record. Once the preliminary injunction was issued, it never came back to the court for reconsideration. It never repealed the injunction. And the law here was a ban. You devoted your resources to settlement counsel. I mean, procedurally, the matter was still set on the court's calendar presumably for a merits proceeding on whether or not it should be converted to a permanent injunction. Well, I understand that. But the reality that was made clear by the preliminary injunction decision is this is a total ban on a particular form of speech in a public park. But doesn't the procedural posture differ from Watson in that regard? Because in Watson, once the use of force hearing was over, then the entire case was done. The offending report had not been used against the deputy in his employment proceeding, and there was nothing left for the court to decide at that point. Well, and I would argue that once the right established by the preliminary injunction was transformed into a binding and enforceable settlement agreement, then there's nothing left for the court to decide. And we have an enforceable right, which is held in perpetuity. And the point was made that we could actually enforce that right, even if others wouldn't have the right to do so. Okay. Thank you both very much. You are, but the case was very well argued. Thank you both. We will take it under submission.
judges: Gleason, Tallman, Watford